# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

|  |  |
|---|---|
| DUANE RONALD BELANUS,<br><br>Plaintiff,<br><br>vs.<br><br>TRACY CHANDLER, RAYMOND POTTER, LEO GALLAGHER, MELISSA BROCH, CATHY MURPHY, and JEFFREY SHERLOCK,<br><br>Defendants. | Cause No. CV 11-00026-H-DWM-RKS<br><br>ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT |

Pending are Plaintiff Mr. Duane Belanus's Motion to Proceed in Forma Pauperis (C.D. 1) and a proposed civil rights Complaint (C.D. 2). The Motion to Proceed in Forma Pauperis will be granted and the Complaint recommended for dismissal for failure to state a claim upon which relief may be granted. It is also recommended that Mr. Belanus receive a strike under 28 U.S.C. § 1915(g), and that any appeal of this matter would have no merit.

## I. JURISDICTION AND VENUE

The Court has personal jurisdiction over the named parties. The case presents a federal question over which jurisdiction lies pursuant to 28 U.S.C. §

1331, 28 U.S.C. § 1343(a), 42 U.S.C. § 1983, and 18 U.S.C. 2510 et. seq.  Venue

is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 and

Local Rule 1.11(a)(2)(C).

This proceeding was referred to this Court pursuant to Local Rule 73 and 28

U.S.C. § 636(b)(1).

## II.  MOTION TO PROCEED IN FORMA PAUPERIS

Mr. Belanus submitted a declaration and an account statement sufficient to

make the showing required by 28 U.S.C. §1915(a).  Accordingly, the request to

proceed in forma pauperis will be granted.  28 U.S.C. § 1915(a).

Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Belanus is required to pay the

statutory filing fee of $350.00.  Mr. Belanus submitted account statements showing

average monthly deposits of $127.46 over the six months immediately preceding

the filing of this action.  Therefore, an initial partial filing fee of $25.49 will be

assessed by this Order.  See 28 U.S.C. § 1915(b)(1)(B) (allowing an assessment in

the amount of 20% of the prisoner's average monthly deposits).  By separate order,

the Court will direct the appropriate agency to collect the initial partial filing fee

from Mr. Belanus's account and forward it to the Clerk of Court.

Thereafter, Mr. Belanus will be obligated to make monthly payments of 20%

of the preceding month's income credited to Mr. Belanus's prison trust account. The percentage is set by statute and cannot be altered.  <u>See</u> 28 U.S.C. § 1915(b)(2). By separate order, the Court will direct the agency having custody of Mr. Belanus to forward payments from Mr. Belanus's account to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## III.  STATEMENT OF CASE

## A.  PARTIES

Mr. Belanus is a prisoner proceeding without counsel.  He is incarcerated at Crossroads Correctional Center in Shelby, Montana.  The named defendants are Tracy Chandler, the victim in Mr. Belanus's criminal rape and kidnapping case; Raymond Potter, an investigator with the Lewis and Clark County Sheriff's Department; Leo Gallagher, a prosecutor and elected county attorney of the Lewis and Clark County Attorney's Office; Melissa Broch, a prosecutor with the Lewis and Clark County Attorney's Office; Cathy Murphy, a probation/parole officer and presentence investigator with the Montana Department of Corrections; and the Honorable Jeffrey Sherlock, Lewis and Clark County District Court Judge, presiding judge of Mr. Belanus' trial.  C.D. 2, p. 6.

## B.    FACTUAL BACKGROUND

On August 3, 2008, Mr. Belanus was arrested and charged with kidnapping, rape, inflicting bodily injury during a rape, tampering with evidence of the rape, burglary, and theft.  State v. Belanus, 357 Mont. 463, 240 P.3d 1021 (Mont. 2010). After his trial and conviction in June 2009, he was sentenced to life imprisonment without the possibility of parole on August 13, 2009.  Mr. Belanus appealed his conviction to the Montana Supreme Court and the conviction was affirmed on September 21, 2010.

## C.    ALLEGATIONS

Mr. Belanus alleges that sometime between May 1, 2008 and June 20, 2008 he called his girlfriend, Tracy Chandler, on the telephone.  Mr. Belanus alleges he was intoxicated at the time of the call.  The telephone conversation "led to an argument and further escalated into an angry drunken rant."  C.D. 2, p.7. Unbeknownst to Mr. Belanus, Ms. Chandler recorded the conversation.  C.D. 2, p. 8.  Ms. Chandler played the recording for her coworkers so they could give the recording to the police to identify Mr. Belanus if anything happened to her because of the graphic threats of extreme violence. C.D. 2, p. 15.  After Ms. Chandler was, indeed, horrifically assaulted, one of Ms. Chandler's coworkers told Investigator

Potter about the recording during his investigation of Mr. Belanus's criminal case. Mr. Potter then asked Ms. Chandler for the tape whereupon she gave it to him. C.D. 2, p. 8.

Based upon the use of this recording at his criminal trial and sentencing, Mr. Belanus alleges (1) his constitutional right to privacy protected by the Fourth Amendment to the United States Constitution was violated (C.D. 2, p. 7), and (2) he is entitled to damages from each Defendant for their separate violation of 18 U.S.C. §§ 2515 & 2520 (C.D. 2, p. 5). Sections 2511(5) and 2520 provide for recovery of civil damages for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ." 18 U.S.C. § 2520(a).

## IV. SCREENING PER 28 U.S.C. § 1915(e)(2)

As Mr. Belanus is a prisoner proceeding in forma pauperis, this Court must review his Complaint under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require this court to dismiss a complaint before it is served upon defendants if it is "frivolous," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted). This requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. 544. A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)(quoting Bell, 127 S.Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). The "plausibility standard" is guided by "[t]wo working principles." Iqbal, 129 S.Ct. at 1949. First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal,</u> 129 S.Ct. at 1949. "Second, only a complaint that states a plausible claim for relief survives" and "[d]etermining whether a complaint states a plausible claim for relief will, . . . , be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal,</u> 129 S.Ct. at 1950. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Iqbal,</u> 129 S.Ct. at 1949 (internal quotation marks and citation omitted).

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal,</u> 129 S.Ct. at 1950. Legal conclusions must be supported by factual allegations. <u>Iqbal,</u> 129 S.Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal,</u> 129 S.Ct. at 1950.

Even after <u>Twombly</u>, "[a] document filed *pro se* is 'to be liberally construed,'

and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'." Erickson, 127 S.Ct. at 2200; Cf. Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); see also Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010)(pro se filings construed liberally when evaluated under Iqbal).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez, 203 F.3d. at 1127 (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). Here amendment would be futile.

## V.  ANALYSIS

### A.  Mr. Belanus Fails to State a Claim Under 18 U.S.C. §§ 2510-2520

Mr. Belanus is not entitled to recover from any Defendants under 18 U.S.C.

§ 2520 because the recording of his threats of extreme violence is not an oral communication as defined in § 2510(2). Even if the recording were an oral communication, Ms. Chandler did not intercept Mr. Belanus's phone call for the purpose of committing a criminal or tortious act as required. 18 U.S.C. § 2511(2)(d). Although Mr. Belanus seeks damages from all Defendants under this statute, his claim is analyzed only as against Ms. Chandler because the statute clearly applies at most only to the person who has intercepted the communications. 18 U.S.C. § 2511(1). Mr. Belanus fails to state a claim under 18 U.S.C. §§ 2510-2520.

The federal wiretap statute provides that "any person who (a) intentionally intercepts, . . . any wire, oral, or electronic communication; . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)." 18 U.S.C. § 2511(1). "'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation . . . ." 18 U.S.C. § 2510(2). Examining the definition of oral communication under federal law, Mr. Belanus could not have had an expectation that his phone call would not be intercepted because of the "unreliable ear" doctrine. United States v. White,

401 U.S. 745 (1971). Under federal law, a speaker assumes the person to whom he is speaking is unreliable or could be recording the conversation. Id. Mr. Belanus is not protected under the Fourth Amendment for the admission of Ms. Chandler's recording of their conversation at his trial.

Montana law does provide some protection for the recording of telephone conversations, however. In Montana there is some reasonable expectation of privacy for cellular telephone calls such that the recording of calls by or at the behest of the government is a search. State v. Allen, 241 P.3d 1045, 1060-1061 (Mont. 2010). In Allen, the Montana Supreme Court focused on the government's role in recording the Defendant, and held that the Montana Constitution's extended privacy protection provides more protection than federal law under the Fourth Amendment. Allen, 241 P.3d at 1059-1061; Mont. Const. art. II, §§ 10, 11. A government informant's consent is not enough to meet the consent search warrant exception. Allen, 241 P.3d at 1060-1061. A search warrant or warrant exception is required in Montana for recordings made by or for the government to be used as evidence. Id. The consent exception to a search warrant applies only when both parties consent to recording their conversation. Id.

The Montana Constitution's extended privacy protection applies to protect

individuals from state action only.  State v. Malkuch, 154 P.3d 558, 560 (Mont. 2007) citing State v. Long, 700 P.2d 153, 157 (Mont. 1985).  A search conducted by private individuals does not violate a defendant's privacy rights.  Id.  Two factors are analyzed to determine if a private person was acting as a government agent in conducting a search: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends."  Malkuch, 154 P.2d at 560, (citing U.S. v. Miller, 688 F.2d 652, 657 (9th Cir. 1982)).

In Malkuch, a teenage son and his babysitter informed a police officer the son's mother was using drugs.  The officer told them he could not do anything about the mother's drug use without evidence, so they snuck into the mother's room and brought the officer a vial of what later tested to be methamphetamine. Malkuch, 154 P.2d at 559.  Using the methamphetamine and interview statements from the son and babysitter, the officer obtained a search warrant, and both parents were eventually convicted of felony drug charges.  Id. at 560.  The Montana Supreme Court held that the son and babysitter were not working as government agents under the above factors because the police did not know of the search until after it occurred, and they performed the search out of concern for safety of the

children.  Id. at 561.

Recording a conversation without the other party's permission can be a misdemeanor in Montana, subject to limited exceptions.  Montana Code Annotated § 45-8-213 Privacy in Communications provides: "a person commits the offense of violating privacy in communications if the person knowingly or purposely: . . . (c) records or causes to be recorded a conversation by use of a hidden electronic or mechanical device that reproduces a human conversation without the knowledge of all parties to the conversation." Mont. Code Ann. § 45-8-213(c).  This statute does not discuss admissibility of such recordings as evidence, nor does it provide any civil remedies.  The exceptions to the statute allow recording public officials in performance of their public duty, persons speaking at public meetings, persons given warning of the recording, and health care emergency communications. § 45-8-213(c)(i)-(iv).  The statute does not have an exception for recording threats or evidence of criminal activity, although similar statutes in other states do provide such an exception.  720 ILCS 5/14-3(I); Carroll v. Merrill Lynch, 2011 WL 1838563 (N.D.Ill)(wife recording threats made against her husband by co-worker permitted under exception); McWilliams v. McWilliams, 2007 WL 1141613 (N.D.Ill.)(ex-wife who recorded ex-husband's threats after repeated threatening

calls permitted under exception).

Analyzing the "oral communication" definition under Montana law, Mr. Belanus's claim still fails. It cannot be said that Mr. Belanus could have an expectation that his graphic threats of extreme violence to Ms. Chandler–themselves a violation of § 45-8-213–were not subject to interception under circumstances justifying such expectation. Ms. Chandler's recording preserved evidence of Mr. Belanus's criminal threats toward her. Threats he later was convicted of implementing in the most brutal fashion. Ms. Chandler feared Mr. Belanus would follow through on his threats, so she played the recording for her coworker and told her to forward to police if anything happened to her. Mr. Belanus did follow through on his threats in a violent and brutal attack on Ms. Chandler in August 2008, a few months after she made the recording. Whatever Montana's privacy protection for phone conversations, a person cannot have a reasonable expectation that his illegal threats to someone's life or personal safety will not be recorded and used against him. Mont. Code Ann. § 45-8-213.

Importantly, in this case Ms. Chandler made the recording of her own accord. Unlike <u>Allen</u> but similar to <u>Malkuch</u>, here the government knew nothing of the recording until it began investigating Mr. Belanus's case months later, well

after both the communications and the assault occurred. The Montana Supreme

Court's focus in <u>Allen</u> was on government interference with speakers' privacy in

recording conversations. As there was no government involvement in making the

recording here, the specific privacy protection discussed in <u>Allen</u> does not apply to

Mr. Belanus. There was no state action at the time the search occurred, so Mr.

Belanus's privacy rights were not violated. <u>Malkuch</u>, 154 P.2d at 560. Under

Montana law, Mr. Belanus does not meet the "oral communication" definition set

forth in 18 U.S.C. § 2510.

Even if the recording of Mr. Belanus met the definition of an oral

communication, the interception still would not violate 18 U.S.C. § 2511 because

Ms. Chandler did not make the recording for the purpose of committing a crime.

As set forth in18 U.S.C. § 2511:

> It shall not be unlawful under this chapter for a person not acting
> under color of law to intercept a wire, oral, or electronic
> communication where such person is a party to the communication or
> where one of the parties to the communication has given prior consent
> to such interception unless such communication is intercepted <u>for the
> purpose of committing any criminal or tortious act in violation of the
> Constitution or laws of the United States or of any State.</u>

18 U.S.C. § 2511(2)(d)(emphasis added).

Ms. Chandler was not acting under color of law here because the

government had nothing to do with her decision to record Mr. Belanus. She did not even tell the government she had made the recording. Rather, her coworker informed Investigator Potter of the recording, and he asked Ms. Chandler for it. C.D. 2, p. 8, 15. It was not Ms. Chandler's decision to use the recording at Mr. Belanus's trial or sentencing. Ms. Chandler was not acting under color of law when she recorded Mr. Belanus threatening her. No malicious prosecution claim lies against Ms. Chandler under Montana law because she had probable cause for her actions as a matter of law. McLeod v. State ex rel. Dept. of Transp., 206 P.3d 956, 963 (Mont. 2009).

Mr. Belanus's Complaint helpfully points out that Ms. Chandler made the recording to preserve evidence of Mr. Belanus's threats toward her "in case anything ever happened to" her. (C.D. 2, p. 15). There is no allegation in the Complaint and its voluminous attachments that Ms. Chandler made the recording for the purpose[1] of committing a crime.

Mr. Belanus fails to state a claim against Ms. Chandler under 18 U.S.C. § 2510 et seq. because the recording used at his trial was not an oral communication,

_____

[1] "Purposely" is the highest mental state under Montana law. Mont. Code Ann. Section 45-2-101(58); State v. Pierce, 651 P.2d 62, 66 (Mont. 1982).

and Ms. Chandler did not make the recording for the purpose of committing any criminal or tortious act.

**B. Immunity**

Mr. Belanus is not entitled to recover "monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Monetary relief under 18 U.S.C. §§ 2511(5) & 2520 is the only remedy Mr. Belanus seeks. C.D. 2, p.24. Mr. Belanus's claim should be dismissed because all of the Defendants in this case are immune.

Defendants Mr. Gallagher and Mr. Broch are entitled to prosecutorial immunity for acts taken in association with Mr. Belanus's prosecution. Kalina v. Flectcher, 522 U.S. 118, 123-24 (1997). Judge Sherlock is entitled to absolute judicial immunity for presiding over Mr. Belanus's criminal trial. Mireless v. Waco, 502 U.S. 9, 11 (1991); Pierson v. Ray, 386 U.S. 547, 553-4 (1967). Ms. Murphy has absolute immunity for her work as a probation officer in Mr. Belanus's trial and sentencing. Demoran v. Witt, 781 F.2d 155, 157 (9th Cir. 1986).

Mr. Potter has qualified immunity for his involvement as an investigator with the Lewis and Clark County Sheriff's Department. Police officers are not

absolutely immune. <u>Imbler v. Patchman</u>, 424 U.S. 409, 418-419 (1976). They are

entitled to qualified immunity in suits for damages when "their actions could

reasonably have been thought consistent with the rights they are alleged to have

violated." <u>Richardson v. McKnight</u>, 521 U.S. 399, 407-408 (1997). Mr. Belanus

alleges Mr. Potter obtained Ms. Chandler's recording of Mr. Belanus's threats and

provided the recording to the prosecutors. This action is a standard part of police

investigation, and in no way violated Mr. Belanus's Fourth Amendment rights.

Mr. Potter has qualified immunity in this case.

Ms. Chandler is immune as a testifying witness in Mr. Belanus's trial.

"Witnesses . . . are accorded absolute immunity from liability for their testimony in

judicial proceedings." <u>Butz v. Economou</u>, 438 U.S. 478, 510-513 (1978); <u>Paine v.

City of Lompoc</u>, 265 F.3d 975, 980 (9th Cir. 2001). The intent behind this

immunity is "to encourage witnesses to come forward and speak freely in court by

relieving the potential defendant of any fear that he will later have the burden of

litigating the propriety of his conduct as a witness." <u>Paine</u>, 265 F.3d at 980. Ms.

Chandler was called to testify at Mr. Belanus's trial where the facts, as quoted by

the Montana Supreme Court who affirmed his conviction, included:

chasing T.C. when she tried to escape from Belanus during their drive to his house,

dragging her back to his car by her hair, and hitting and kicking her in a fit of rage. It also included choking T.C. to the point she could not breathe and urinated in her pants, and then handcuffing and raping her by violently shoving an "anal wand" into her repeatedly, which caused her to scream in pain and defecate and bleed on the floor, all while calling her a "slut" and a "stupid bitch" and telling her she deserved it.

State v. Belanus, 240 P.3d 1021, 1022 (Mont. 2010).

Mr. Belanus is now suing Ms. Chandler for her testimony. There is no indication Ms. Chandler did anything but testify honestly at Mr. Belanus's trial regarding making the recording or her reasons for doing so. While Ms. Chandler apparently recorded Mr. Belanus' illegal threats to commit the reprehensible acts of which he was convicted without his knowledge, the prosecution placed the recording into evidence, not Ms. Chandler. The Montana Supreme Court upheld the admissibility of the recording. Belanus, 240 P.3d at 1025. Ms. Chandler has absolute immunity for her testimony in Mr. Belanus's trial.

Moreover, Ms. Chandler did not make the recording as part of a joint action with the government, so she was not acting under color of law and could not be liable under § 1983 if Mr. Belanus seeks to invoke a remedy under that statute. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-1541 (9th Cir. 1989)(en banc)("Private parties act under color of state law if they

willfully participate in joint action with state officials to deprive others of constitutional rights.")

## VI. CONCLUSION

As set forth above, Mr. Belanus's claims fail to state a federal claim upon which relief may be granted. These are not defects which could be cured by amendment. Accordingly, the Complaint should be dismissed with prejudice.

### A. "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This dismissal will be recommended for a strike because Mr. Belanus has failed to state a federal claim.

### B. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
(A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma

> pauperis and states in writing its reasons for the certification or
> finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke, 490 U.S. at 325, 327; Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact. The finding that Mr. Belanus's claims fail to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit. Therefore, this Court will certify that any appeal of this matter would not be taken in good faith.

Accordingly, the Court issues the following:

# ORDER

1.  Mr. Belanus's Motion for Leave to Proceed in forma pauperis (C.D. 1) is **GRANTED.** The Clerk of Court shall waive prepayment of the filing fee. Mr. Belanus is hereby assessed an initial partial filing fee of $25.49.

2.  The Clerk shall edit the text of the docket entry for the Complaint to remove the word "LODGED" and the Complaint is deemed filed on May 20, 2011.

3.  At all times during the pendency of this action, Mr. Belanus SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Belanus has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

# RECOMMENDATIONS

1.  Mr. Belanus's Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Clerk of Court should be

directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.   The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. Belanus's failure to state a claim.

3.   The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Maier's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit.  The record makes plain the instant Complaint fails to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO OBJECT TO
## FINDINGS & RECOMMENDATIONS AND
## CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Belanus may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period

would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 8th day of July, 2011.


/s/ Keith Strong
Keith Strong
United States Magistrate Judge